## ROBESON–POWELL DRUG CO. v. UNITED STATES.

### No. 1722.

District Court, D. Kansas, Third Division.

March 3, 1948.

Earl Bohannon, of Parsons, Kan., for plaintiff.

Randolph Carpenter, U. S. Atty., and Philip A. Dergance, Asst. U. S. Atty., both of Topeka, Kan., for defendant.

RICE, District Judge.

This matter came on for a pre-trial conference on October 23, 1947, at Fort Scott, the plaintiff present by Earl Bohannon, its attorney, and the defendant present by Philip A. Dergance, Assistant United States Attorney for the District of Kansas.

1. At the pre-trial conference it was agreed that the allegations in the petition and the exhibits thereto attached relative to the amounts of excess profits and income taxes paid by the plaintiff for the years 1941 and 1942 were correct, that the dates of such payments were likewise correct, and that the plaintiff paid for the year 1941 Excess Profits Taxes in the amount of $233.47 and Income Taxes in the amount of $978.75 (or a total of $1212.22) in two equal installments on June 8 and December 22, 1942, respectively, and paid Income Taxes for the year 1942 in the amount of $918.13 in three installments of $229.53 each on April 15, June 15, and September 15, 1943, and in one installment of $229.54 on December 15, 1944.

2. It was further agreed at said pre-trial conference that plaintiff's books for the year 1942 reflected a net operating loss under Section 122 (a) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 122 (a), of $1015.17, and that said books for the year 1943 reflected a similar loss of $1617.85, which operating losses were based in part upon payment by plaintiff to its President and Secretary-Treasurer, Paul H. Robeson and Esther H. Robeson, respectively, of salaries of $100 per week and $50 per week respectively for the last 39 weeks of 1942 and the whole year of 1943.

3. It was further agreed at the pre-trial conference that plaintiff on or about June 30, 1944, filed with the Commissioner of Internal Revenue its claim for refund of $896 of the $1212.22 actually paid the plaintiff as Excess Profits Taxes and Income Taxes for the year 1941, which claim for refund was reduced by plaintiff on Dec. 29, 1944, to $759.40, and that said claim for refund was based principally upon the alleged erroneous inclusion in 1941 income of an item of $177.08 allegedly growing from a 1940 rebate of electricity bills and upon a credit claimed by plaintiff under the net operating loss carryback provisions of the Internal Revenue Code of plaintiff's claimed net operating losses for 1942 and 1943 of $1015.17 and $1617.85 respectively.

4. It was also agreed at the pre-trial conference that plaintiff on or about December 29, 1944, filed with the Commissioner of Internal Revenue a claim for refund of the total amount of Income Taxes paid by the plaintiff for the year 1942, that is to say, for a refund of $918.13. This claim for refund was based principally upon plaintiff's failure in filing its original return for 1942 to take advantage of certain allowable deductions growing from purchases of merchandise during the year 1941 which were paid for by plaintiff, according to its books, during the year 1942. This deduction, according to plaintiff, resulted in a net operating loss for the year 1942 of $1015.17 and left plaintiff's operations for that year in a position of such a nature that it was not liable for either Income Tax or Excess Profits Tax.

5. It was further agreed at said pre-trial conference that the Commissioner of Internal Revenue had considered the claims for refund mentioned in paragraphs 3 and 4 above and has made his decision thereon. By his decision he ruled that:

(a) The $177.08 rebate item was properly a part of plaintiff's 1941 income.

(b) The merchandise purchase item in the 1942 income was allowable as a deduction from income.

(c) The salaries of the President and the Secretary-Treasurer of the plaintiff were excessive during the year 1942 in the amount of $1755 and that the amount of $1755 should have been included as net income for that year and not as an operating cost.

(d) The salaries of the President and the Secretary-Treasurer of the plaintiff were excessive during the year 1943 in the amount of $2385 and that the amount of $2385 should have been included as net income for that year and not as an operating cost.

6. That as a result of the rulings set forth in paragraph 5 above, the Commissioner of Internal Revenue, in passing upon plaintiff's claims for refund for the years 1941 & 1942 assessed as further liability of the plaintiff for the year 1941 $11.49 Income Tax and $8.39 Excess Profits Tax, and assessed as Income Tax for the year 1943 Income Tax in the amount of $180.28 as the liability of the Plaintiff. The Commissioner, however, with respect to the 1942 Income Taxes found that the plaintiff had overpaid them in the amount of $744.98. The net allowance to plaintiff, therefore, growing from the assessment of additional Income Taxes for the years 1941 and 1943 and the admission of overpayment for 1942, together with interest allowable to the plaintiff and collectible from the plaintiff according to law, was $610.17.

7. It was further agreed that on or about August 16, 1945, the Commissioner tendered to the plaintiff the $610.17 mentioned in paragraph 6 by treasury check numbered 17,475,329, dated August 16, 1945, but that plaintiff, on or about October 19, 1945, refused the tender of said $610.17 and returned said check to the Commissioner of Internal Revenue.

8. It was also agreed at the pre-trial conference that the action of the Commissioner in disallowing the amounts of $1755 and $2385 for the years 1942 and 1943 respectively operated to eliminate plaintiff's net operating losses for those years and thus deprived plaintiff of its right to carry its losses for those years back to 1941 for the purpose of reducing its 1941 tax liability.

9. It was further agreed at the pre-trial conference that the defendant had no evidence other than the evidence of the books of the company as to its actual operations during the years 1941, 1942 and 1943, and that for the purpose of the trial of the issues in this case, the book records of the company would be taken as true.

10. It was finally agreed at the pre-trial conference that the only issues of fact remaining to be tried by the Court concerned the $177.08 rebate item and whether it was a part of plaintiff's income for 1940 or 1941, and concerned the reasonableness of the salaries paid by the plaintiff to its President and Secretary-Treasurer during the years 1942 and 1943, and whether or not such salaries were excessive for the year 1942 in the amount of $1755 and were excessive for the year 1943 in the amount of $2385, that a finding by the Court on these points would resolve the

608

controversy between the parties and if it were found that plaintiff's position was correct, or partially correct, there would be a judgment for plaintiff against the defendant, but if it were found that defendant's position, as found by the Commissioner of Internal Revenue, were correct, there would be judgment for the defendant.

11. This matter came on for trial at Fort Scott on November 14, 1947, on the issues. mentioned in the above paragraph.

12. Before the presentation of evidence, it was stipulated by and between the parties that the $177.08 rebate item was properly a part of plaintiff's 1940 income and not its 1941 income, and in making its final judgment the Court should so rule.

13. The plaintiff and the defendant then presented their evidence as to the reasonableness of the salaries and excessiveness of the salaries paid by plaintiff to its President and Secretary-Treasurer for the last 39 weeks of 1942 and the whole of the year 1943, which evidence showed that during such period of time plaintiff paid its President $100 per week and its Secretary-Treasurer $50 per week, the defendant contending that the reasonable salaries for such periods should have been not to exceed $70 per week and $35 per week respectively, and the defendant contending that plaintiff's salaries for the year 1942 were excessive in the amount of $1755, and for the year 1943 excessive in the amount of $2385. Each party presented several witnesses to sustain their respective contentions.

14. At the close of the testimony each side rested and the Court took the matter under advisement.

15. Now on this 3rd day of March, 1948, the Court, being advised in the premises, makes the following findings of fact:

(a) The $177.08 rebate item accrued to the plaintiff during the year 1940 and was not properly a part of plaintiff's 1941 income.

(b) Salaries paid by plaintiff to its President and Secretary-Treasurer during the year 1942 were reasonable and were not excessive in the amount of $1755, as contended by the defendant, and were not excessive in any amount.

(c) Salaries paid by plaintiff to its President and Secretary-Treasurer during the year 1943 were reasonable and were not excessive in the amount of $2385, as contended by the defendant, and were not excessive in any amount.

(d) Finding (a) operates to reduce net income for tax purposes for the year 1941 by the amount of $177.08.

(e) Finding (b) operates to validate plaintiff's claim of net operating loss for 1942 in the amount of $1015.17.

(f) Finding (c) operates to validate plaintiff's claim of net operating loss for 1943 in the amount of $1617.85.

(g) The plaintiff for the year 1941 paid Excess Profits Taxes in the amount of $233.47 and Income Taxes in the amount of $978.75, or a total of $1212.22, making its payments in two equal installments on June 8 and December 22, 1942.

(h) The plaintiff paid Income Taxes for the year 1942 in the amount of $918.13 in three installments of $229.53 each on April 15, June 15, and September 15, 1943, and in one installment of $229.54 on December 15, 1944.

(i) The $610.17 tender to the plaintiff, referred to in paragraph 7 above, contained a refund in the amount of $528.57 chargeable as a reduction of the 1942 taxes. The check containing this refund was delivered to the plaintiff on or about August 16, 1945, and on or about October 19, 1945, said check was returned to defendant by plaintiff on the grounds that was for a lesser amount than claimed and might amount to an accord and satisfaction.

16. The Court's conclusions of law based upon the above findings are as follows:

(a) Plaintiff is entitled to have deducted from its taxable income for the year 1941 the amount of $177.08, the amount of $1015.17, the net operating loss for 1942, and the amount of $2385, the net operating loss for 1943, thus reducing its taxable income for the year 1941 to the amount of $2156.26, upon which, considering other deductions and matters not here in dispute,

there is an income tax liability in the amount of $452.82, and no more.

(b) Plaintiff had no taxable income for the year 1942.

(c) Plaintiff had no taxable income for the year 1943.

(d) The plaintiff, with respect to 1941 taxes, is entitled to judgment against the defendant for $1212.22, less $452.82, plus interest on the difference according to law.

(e) The plaintiff, with respect to 1942 taxes, is entitled to judgment against the defendant in the amount of $918.13, plus interest from dates of payments according to law.

It is therefore ordered, adjudged and decreed that the plaintiff have judgment against the defendant with respect to plaintiff's 1941 taxes in the amount of $759.40, with interest thereon at six per cent per annum, according to the interest provisions of the Internal Revenue Code, and that the plaintiff have judgment with respect to the 1942 taxes in the amount of $918.13, with interest from dates of payments at six per cent per annum, according to the interest provisions of the Internal Revenue Code, and, further, that the plaintiff have judgment for costs.